The last case on the calendar is Lilitha Jacob v. Mentor Worldwide. Lilitha Jacob v. Mentor Worldwide LLC Mr. Burns, are you ready to proceed? Yes. Good morning, Your Honors, and may it please the Court, I'm Thomas Burns, along with Shannon Reese. We represent Dr. Jacob. I'm going to address the preemption issue, and Ms. Reese is going to address the preemption issue. Can you bring that mic closer? Just bend it a little, that's all. Less. There we go. All right, got it. Thank you. In Mink and Gedelia, this Court held manufacturing defect claims weren't federally preempted. That's because the complaints in those cases had plausibly alleged adequate facts that indicated the breach of parallel federal and state duties. Here, without citing Mink or Gedelia or considering the breaches of parallel duties that Dr. Jacob had factually alleged, the District Court dismissed her manufacturing defect claims as federally preempted. This was an error for many reasons, but the main two reasons are that the District Court got the pleading requirements upside down, and she wrote an order that was very confusing. It wasn't clear about which claims were being dismissed, for what reason, and whether they were being dismissed with or without prejudice. Which complaint are you talking about? Are you talking about the first one or the second one? I'm talking about the first one now, but we're talking kind of about both of them, and that dovetails into what the appellate relief, what's the appellate remedy here. I think the appellate remedy here really is not to reinstate one complaint or the other. It's really to get the case back in the District Court and have the District Court do this analysis in the first instance under Mink and Gedelia. I think both of the complaints adequately stated manufacturing defect claims, but I think it would make more sense to send it back to have it pled really well, tightly, because it's just going to clean up a lot of stuff, not only for Dr. Jacob, but also for my colleague who's representing Mentor Worldwide. It'll be a much tighter, cleaner complaint if she gets that one additional chance to make her complaint or her claims really clear. Sure. John, paragraph 84 of the initial complaint, she says in her pro se complaint that Mentor violated federal law and, quote, it's parallel state law duties, end quote. Is that enough to survive preemption? I think yes, but she goes further than that. I think that's what, in Mink and Gedelia, Judge Martin was saying. That's basically enough. You just have to identify a federal duty, identify a state duty, and then plead facts that somehow connect them. Maybe you're going to have a little trouble when you get to the summary judgment stage tying those things together, but we're just at the pleading stage. It's no displeading. You just need to give us enough so we understand what you're complaining about and let's get on with it. Let's go. Let's do discovery. Let's get to summary judgment. But she goes further than that. She actually cites some federal regulations in the complaint, and she talks about facts that implicate other federal regulations. For example, the thing that's clearest to me is her factual allegation that you guys didn't, you didn't follow the recipe. You got your premarket approval. You were supposed to use these components. You were supposed to use these processes, and you didn't do that. Now, she doesn't cite the regulation that says that's what you're supposed to do. That regulation, as I understand it, is 21 CFR section 814.80, but that's an example of the state tort being pled adequately and then the federal duty being identified because she's pled a fact about that. It's like you were supposed to follow the recipe, and you didn't follow the recipe, and that's why you're breaching both a state duty and a federal duty, and these are parallel claims because we're not asking the state claim to do anything different from or in addition to. We're not saying that you should have not followed the recipe and that was your mistake. We're saying that you didn't follow the recipe that the FDA said that you're supposed to, and that's why that kind of claim should go forward. Now, I think a really helpful way to think about the case is what should the district court really have done, and that's indicated in both Mink and Gedelia. First of all, district court should have understood it's dealing with a pro se complaint, so number one thing it should have done is liberally construe it. That means make a list of every state law claim that the facts of the complaint plausibly could have implicated, so make that list. District court doesn't do that. Number two, see if the facts alleged satisfy the elements of those state claims. List those things out, do the analysis. Again, district court doesn't do that. Third thing, do the federal preemption analysis because some of those state law claims, for example, your failure to warn claim, clearly federally preempted, and the district court hits the nail on the head there and says your failure to warn claim, that can't go forward. I'm knocking that out, but what the district court does that's confusing is she jumps straight to the federal preemption problem. She says, well, your failure to warn claim is knocked out, but to the extent, the phrase to the extent is doing a lot of heavy lifting in that order. She says, to the extent that you've got other claims, go replead them. I'm not even going to do the analysis. So what's a pro se litigant supposed to do in that circumstance? The pro se litigant doesn't really understand what the order is saying because it's not done the work. It's not said, OK, these are the claims that you're raising, OK, these are the elements, and your claims on these, or these claims are failing for these reasons. Because then, with an order that says that, even a pro se litigant could say, OK, I know what I need to fix. And instead, the judge writes an order that just says, there are problems here, you pro se litigant figure it out, I'm not going to really explain what the ruling is. And that's when the court gets this second complaint that I think, again, states the manufacturing defect claims adequately, but it's not as good. It's not as good as the first pro se complaint. And the district court should have expected that, frankly, because the district court wrote this confusing order that didn't explain what needed to be corrected. And then the district court slams the door shut the second time and says, OK, well, you didn't fix the problems that I never identified in the first place, therefore, your claim is futile, therefore, no further amendments go away. That's not really how the pleading is supposed to work. The district court should have identified the problems, given the pro se litigant a chance to correct it, and should not have dismissed the manufacturing defect claims with prejudice unless it was clear that they were futile. And here, they're not. And we know that because that's what Mink and Gedelia say. Mink and Gedelia say, generally, manufacturing defect claims are not going to be federally preempted at the motion dismiss stage. We're just going to wait until you get to summary judgment. And maybe you can tie it up, maybe you can't. But that's the way litigation in this country is supposed to work. So if we just look at the first complaint, we've identified this in the briefs, but she says that the breast implants were manufactured with non-conforming materials and uncertified components in violation of the FDA requirements, resulting in product failure and serious injury to her. That's paragraph 119 of the complaint. That's everything as far as you're concerned with 21 CFR 814.80, which is saying you got to follow the recipe. You got to follow the FDA approval. She has other allegations about in the complaint, or sorry, the second complaint, where she said, well, some of the stuff that was in these things wasn't right. Like it was an oily consistency, it was the wrong color, it had these heavy metals. And therefore, again, you weren't using the right recipe. And that's, again, in Minkin-Dealy, we said that's enough. And then I guess there's some follow-on requirements that she says they didn't do, like these post-approval studies and checking in on things. And those aren't really characterized, in my view, as like a failure to warn type of claim. It's like a failure to recall. So that's like, oh, gosh, we put out a bad batch, or we had the wrong ingredients for this thing, or something went wrong. We need to tell all the doctors who put these things in and the consumers who actually got them, we need to recall this. There's a problem with it, and if you don't take it out, it's going to cause you injury. And so that's the type of claim that we think should go forward. But basically, the relief we're asking for is vacate the judgment, instruct the district judge, you need to consider Minkin-Dealy, and then my colleague's going to talk about the Whelan case also. And when the complaint is repled, apply these standards, and we'll see where we go from there. Thank you. Before you sit down, counsel, if we vacated the judgment, wouldn't it make more sense to allow Ms. Jacob to file an amended complaint at that moment in time? That's precisely what I'm asking you to do. Okay, I misunderstood. I thought you wanted the district court judge to do an analysis of the existing offer. Oh, no, no. It's more of like a heads up to the district judge, like, hey, when you get this amended complaint, remember to look at Minkin-Dealy, and then Whelan, because those are the cases that set the standard for whether it's stating the complaint. Okay, thank you. Thank you. May it please the court, Shannon Reese, also on behalf of the appellant. Your honors, here, mentor never even argued that the complaint violated federal rules of civil procedure eight or 10. They never asked for a more definite statement, and the district judge here, Sua Sponte, did find violations of rules eight and 10, but only to the extent that she had not already dismissed the claims for preemption grounds. Any dismissal on this procedural basis was an abuse of discretion, as the district judge failed to apply the correct legal standard. In the order dismissing the original complaint, the judge cites to rule A, requiring a short complaint statement, rule 8D, requiring that the allegations be simple, concise, and direct, and rule 10, requiring that the party state its claims in numbered paragraphs. Nowhere does the district judge cite to this court's decision in Whelan v. Palm Beach, which clarifies that the purpose of these rules is simply to give adequate notice to the other side as to what they have to respond to. Here, mentor had enough notice to argue preemption in its motion to dismiss, and under the Gedelia case, as my colleague mentioned, the correct order of events is first to see whether the claims can stand under state law, and then to address the preemption grounds. Here, the fact that the district judge did in fact address the preemption grounds is indicative of the fact that this original complaint was in fact informative enough under the Whelan decision to provide the other side with enough information to know what they were responding to. Specifically in the order, the judge states that none of the operative allegations contained in the complaint are in numbered paragraphs. However, of course, the complaint was a form complaint that this pro se plaintiff filled out, but she did attach to that a more detailed complaint, a 38-page complaint, as an addendum that specifically laid everything out in paragraphs. And of course, under Rule 10c, a copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes, and on determining a motion to dismiss, of course, but also to the exhibits. And therefore here, the complaint that was attached as an exhibit sufficiently met the requirements of Rule 10. Thank you, Your Honors. You may finish your statement, Counsel. You may finish your statement. Just that in addition to meeting the requirements of Rule 10, the attachment to the complaint also provided simple, concise, and direct language, and as well as short and plain statement of the claim. And therefore, under the Whelan case, these documents were informative enough to allow the defendant mentor to respond. Thank you. And the way I look at the record is that complaint, which was Exhibit I, as a supplement to the complaint, that was filed with the district court. I mean, it's clear that was. Okay. Thank you. Thank you, Counsel. Good morning, Counsel. Good morning, Your Honor. May it please the Court. Dustin Rollin of Nelson Mullins for the Appalachia Mentor Worldwide, LLC. Your Honor, there's only one claim at issue today, and it is the manufacturing defect claim in the original complaint. The plaintiff waived her failure to warn claim in the original complaint when she amended and did not state another claim for failure to warn. And for the first time hearing that maybe the second complaint is still in play, because I thought from the briefing it was clear that the plaintiff was abandoning those claims. She was not appealing the dismissal of her violation of PMA claim, the breach of employee warranty claim, which was dismissed on privity grounds under Florida law. Not on preemption, on privity, and the lack of informed consent claim. Those claims have been abandoned. They're not at issue in this appeal, nor are the claims against the other three parties that she attempted to bring in, the FDA, her plastic surgeon, Dr. O'Brien, or the American Society of Plastic Surgeons. The only thing at issue in this case is the original manufacturing defect claim. Well, but how can she waive her preemption claims? I mean, it would have been futile for her to reallege those, would it not have been? And we're not making the contention that she should have realleged the original manufacturing defect claim in the amended complaint. We understand that to the extent that was dismissed with prejudice, she has maintained her, preserved her right to appeal that on the preemption. Okay. Thank you. I want to talk a little bit about the procedural issues though before we get to that, the merits. Mentor moved under Twombly, Iqbal, and preemption that this complaint, the first form complaint, with an exhibit that looked to be a complaint, I believe she copied off of another lawyer off the internet. Even if we consider those together as a complaint, the allegations in that numbered complaint are insufficient to state a claim of a manufacturing defect against Mentor. Your Honor, I think as you pointed out, you went to one of the paragraphs of the complaint. This is all boilerplate. It is very nonspecific, conclusory legal conclusions, and I'll read from you from paragraph 106. Mentor was negligent under Florida law in the development, manufacture, testing, inspection, sale of its memory gel silicone gel breast implants by A, manufacturing memory gel silicone gel breast implants that differed from the specifications agreed to by the FDA. By manufacturing them with materials and components which differed from those approved. Failing to follow good manufacturing practices. Well that's fine, but what did we do? You cannot read this complaint and understand what Mentor is alleged to have done. This is all just very generic, nonspecific, with no facts. You expect to see in a complaint that gets past preemption in Twombly, Iqbal, something like Mentor violated its premarket approval from the FDA by making implants whose shells were thinner than their specification. And there's some fact to back that up. Or they used, hypothetically, they used silicone eight instead of the approved silicone three in their implants. And there's none of that in this complaint. And again, that's the reason this complaint that's attached has actually, was written by another lawyer somewhere else in the country, and has been dismissed by federal courts across the country and affirmed by federal courts of appeals as being not sufficient under Twombly-Iqbal a number of times, dozens of times. And there's a reason for that, because it doesn't have any plausible facts as to what Mentor did that differed from its premarket approval from the FDA. Plaintiff needed to state something that was plausible on its face, with enough factual basis, not just threadbare recitals, and that's what this is. These are threadbare recitals and legal conclusions. I want to get to another issue, which is this argument today is very interesting, but none of it was raised below. And it's axiomatic, and Mr. Burns knows this because he's a very talented appellate lawyer. But issues not raised in the district court and raised for the first time in appeal are not heard. And what issue, I guess, is that? I'm curious. Mostly the preemption issue, the merits issue of mink and godelia control. So the point, you're saying that the plaintiff below was supposed to respond to your motion to dismiss with what? With legal argument and authority. Okay. What did the plaintiff do in response to the motion to dismiss? Filed a one-page letter that said, I strongly feel my case should not be dismissed. I'm a doctor. Right? And again, this is- I think that the moral of this case is that doctors should no more practice law than lawyers should practice medicine, right? And there is a peril to advancing pro se. And as I understand from Dr. Jacob, it was her desire to proceed pro se. And I think that that shows us why lawyers are important, because her response to Mentor's motion to dismiss did not give, and Judge Scriven pointed this out, did not give any argument in opposition to the motion to dismiss. It simply said her feelings were that this was unfair. She felt that the immunity afforded to Mentor under preemption was not fair. All right. What do you say about this case, Hitech Pharmaceutical versus HBS, where we said that in this situation, that when an individual fails to respond to a motion to dismiss, quote, that failure would not amount to a waiver or forfeiture if the plaintiff's position is that its complaint states a plausible claim, end quote. What do you say about that? I think that's very different. I think, as I understand, that was an intellectual property case. The defendant filed a motion to dismiss that had multiple points. The plaintiff actually responded with an extensive brief on several of the more salient points, didn't maybe address every single point in the motion to dismiss. And the court said, well, they preserved their arguments on these other points by giving  us very different from where we are here, which is the plaintiff sat on her hands, didn't say anything, didn't give any legal argument against preemption. And now we're here today with a very advanced, evolved preemption argument that was not presented to Judge Scriven below. And it's really, it's been 11th Circuit law forever that if you don't raise these issues in the district court, you cannot raise them for the first time. I guess this is also 11th Circuit law that I just read. I guess I'm trying to figure out. So you're asking us to say that when a sophisticated plaintiff with lots of lawyers fails to make an argument in opposition to a motion to dismiss, that we can consider that argument on appeal. But when a pro se litigant with no lawyer fails to make an opposition, fails to make an argument in opposition to a motion to dismiss, we can't consider that. Your Honor, I think it's a little bit more different of the plaintiff here didn't really oppose the motion. Well, she filed that letter. She did. Well, she filed more than that, counsel. I mean, you say it was just more than that, but she also filed a supplement. She filed some exhibits in addition to a response. She did. But none of those touched on the preemption issue and they didn't really explain the arguments being made today. She didn't make that up. You don't address that. You don't address the high tech case, which is if the court addresses it, there's no waiver. And this is a pro se plaintiff where we have liberal construction of pro se pleadings. I understand, Your Honor. And I feel that Judge Scriven liberally construed the complaint. She took into consideration the supplement as an exhibit, which wasn't part of the complaint. I'm not talking about the district court. I'm talking about this court. You're asking us to consider and say that this is a waiver and she's a pro se plaintiff. Your Honor, I guess my thought would be that if this court adopted a rule that pro se plaintiffs can essentially say nothing in response to a motion to dismiss or let's expand it, can say nothing. But again, that's not accurate because she didn't say nothing. She did file something. She didn't say anything about this argument to the district court. Let's say that she didn't make a preemption argument to the district court. And if we say you can not make an argument just because you're pro se and you could not give a defense at trial, and that's OK because they're pro se, and then we will allow them to go to the appellate court and come up with new arguments. They can get appointed a lawyer and come up with new arguments they never made before. That seems to me to be a slippery slope and a dangerous sort of precedent. It's clear that she did not make these arguments below. And I understand that we give pro se litigants a great deal of latitude. This would be giving her all the latitude in the world and I think would really open a Pandora's box. Because then litigants who didn't do a good job in their case would then say, well, wait a minute. I didn't mean to waive that because I didn't think of it at the time. I want to point out that the immunity that the plaintiff complains about is immunity afforded to mentor by Congress through the medical device amendments to the Food, Drug, and Cosmetic Act, something very intentional that has been upheld by the Supreme Court. And while Mr. Burns makes it sound like preemption is never used at the motion to dismiss stage is really inappropriate, there are hundreds, if not thousands, of district court decisions dismissing cases based on federal preemption and medical device cases. I'd like to get to the merits now, really the Mink-Gedelia argument. I think plaintiffs would still lose, even if you consider the case under Mink and Gedelia. They don't stand for the proposition that manufacturing defect claims, as threadbare as possible, always survive preemption at the motion. Those cases don't stand for that. Gedelia was a case involving a defibrillating vest. It was supposed to give a patient a shock if they were having a cardiac arrest. In that case, the plaintiff was able to allege that the FDA had done an inspection of the facility. They found multiple violations. They found products that were adulterated. And they found, they issued a warning letter. And part of that was that they found that there were some products that were not giving appropriate shocks to patients, which was what happened there. That's very different from this case. That's a lot of plausible facts that might relate to a manufacturing defect claim. We don't have any of that here. The Mink case was about a metal-on-metal hip implant. And the allegations there was that the cobalt and the chromium parts that fit together were grinding and throwing off cobalt-chromium debris into the bloodstream and the tissue, which was causing necrosis and toxicity. Again, something unexpected. That's very different from what we have here, because what we have here is an allegation of a breast implant rupture. It is an inherent, warned-about, known risk that happens. And the FDA knows about it. That's why the warnings say these are not lifetime devices. They can rupture. And so Mink and Godelia eroded the preemption principle in this circuit from Willeke-Gables a little bit. It pushed it back. It diluted it a little bit. But even under those cases, this complaint, I don't believe, states a claim for manufacturing defect that survives preemption. And your honors, the district court did not err here. She got it correct. And we would ask you to affirm. Thank you. Thank you, counsel. Mr. Burns, you have three minutes remaining for rebuttal. Can I ask you to address opposing counsel's point that this is all just boilerplate, garbly gook, especially with respect to the claim that you're pressing? Allegations are similar and, I think, more developed than they were in Mink and Godelia. In Mink and Godelia, they say, OK, there's this federal regulation. You violated it. And I was injured by that violation. And Mink and Godelia say, that's enough. And we say things that I think are adequate at the notice pleading stage, which is like, you were supposed to use certain components and you didn't use that. You were supposed to follow certain processes and you didn't do that. You were supposed to do studies. And where do you say that in the complaint? Some of the allegations are, it's like pages 21 through 24 of the original complaint, which is, that's that count dealing with the second part of count one. For example, we say, you didn't, sorry, I got my notes completely upside down. In that part of count one, it's like allegations 105 through 123. We say things like, you were supposed to use certain components and you didn't do that. You were supposed to use certain processes and you didn't do that. Earlier in the complaint, I think around the 70s, we say, you were supposed to do some post-approval studies and you didn't do that. Now, we don't have to go, I think, as specific as my colleague wants us to go because that would be requiring us to plead with particularity what precisely happened. And number one, that's not required in this type of claim. We're not pleading fraud or mistake. Rule 9b doesn't apply. And number two, how could we reasonably be expected to do that because we don't have any discovery yet to really know what it is that happened. For example, Mental Worldwide is supposed to keep records of what they do when they make a batch of these breast implants. When we get that documentation, we did use silicone 3 instead of silicone 8. Or, aha, you were supposed to do step 5 and bake them at 500 degrees Celsius, or whatever it is that they do with these things. And you didn't do that. You baked them at 400 degrees. And the documentation would show that. But at this point, we don't know. And we can't reasonably be expected to plead that. I think at the notice pleading stage, we've pleaded enough. The preemption issue, my colleagues, I think, misunderstanding my argument. Preemption obviously can be raised at the motion dismiss stage. But it's got to be based on the allegations of the complaint. So what type of manufacturing defect claim could be preempted at this stage? There's only one that I can think of, which is you say, manufacturer, you were supposed to use components A, B, and C. You were supposed to follow processes X, Y, and Z. And you know what? You did it. You did use those components. You did follow those processes. And I was still injured. That's the kind of manufacturing defect claim that would be preempted. Because then we would be asking for an additional or different from state duty to be imposed on the manufacturer. But we're not doing that here. We're saying you didn't follow the recipe, which means you breached the federal duty. And that also breached the state duty. Therefore, they're parallel claims. Therefore, they can go forward. Your Honors, I'm out of time. But I really would like to address the preservation issue, if I may. Judge Lagoa? You may. I'll give you two minutes. OK, thank you. My colleague's, I think, misunderstanding the difference between issues and arguments. And he's also looking at the record in a way that's not as charitable to my client as it should be. She did respond to the motion to dismiss. She did say that she thought her claims weren't preempted. She did mention another case in another state that wasn't preempted. And she thought that hers were better. That means she's taking the position that her claims weren't preempted. And that's all that she's required to do at the district court level. So she took the position. Now, she didn't raise some of the arguments that I raised in my brief or that I'm raising here today. But that's just how appellate litigation works. And that's what we were getting at, what the court was getting at in footnote five of the tax case and in high-tech pharmacies, where we're saying, look, you just got to take the position. And then it's preserved for review in the appellate court. But high-tech specifically says that where the court addresses the merits of the issue, there's not a forfeiture. Absolutely. So she didn't even- That we're bound by high-tech. Correct. So with that said, the remedy that we're asking for is for you to vacate the judgment, direct the district court to allow one further amendment of the complaint, and remind the district court that that complaint, second amended complaint, would be governed by the standards set forth in Mink, Gdelia, and Wieland. Thank you very much to both of you. We'll take the matter under advisement. And the court is adjourned until tomorrow morning. Thank you very much, all. Thank you. Bye. Recording stopped. Recording resumed.